UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| ELLIS ROMEOO LEE THOMAS | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL NO. 3:07cv205 |
| | ) |
| ROSE VAISVILAS, | ) |
| | ) |
| Defendant. | ) |

OPINION AND ORDER

This matter is before the court on a Motion for Summary Judgment filed by the defendant, Rose Vaisvilas ("Vaisvilas"), on March 10, 2009. The plaintiff, Ellis Romeoo Lee Thomas ("Thomas"), proceeding pro se, filed his response on April 8, 2009, to which Vaisvilas replied on April 24, 2009.

For the following reasons, the motion will be granted.

Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim. Fitzpatrick v. Catholic Bishop of Chicago, 916 F.2d 1254, 1256 (7th Cir. 1990). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The standard for granting summary

judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." Id. In Re Matter of Wildman, 859 F.2d 553, 557 (7th Cir. 1988); Klein v. Ryan, 847 F.2d 368, 374 (7th Cir. 1988); Valentine v. Joliet Township High School District No. 204, 802 F.2d 981, 986 (7th Cir. 1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." Juarez v. Ameritech Mobile Communications, Inc., 957 F.2d 317, 322 (7th Cir. 1992)(quoting Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact, Celotex, 477 U.S. at 323. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. Goka v. Bobbitt, 862 F.2d 646, 649 (7th Cir. 1988); Guenin v. Sendra Corp., 700 F. Supp. 973, 974 (N.D. Ind. 1988); Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir.), cert. denied, 464 U.S. 960 (1983).

So that the district court may readily determine whether genuine issues of material fact exist, under Local Rule 56.1, the moving party is obligated to file with the court a "Statement of Material Facts" supported by appropriate citation to the record to which the moving party

contends no genuine issues exist. In addition, the non-movant is obligated to file with the court a "Statement of Genuine Issues" supported by appropriate citation to the record outlining all material facts to which the non-movant contends exist that must be litigated. See, Waldridge v. American Hoechst Corp. et al., 24 F.3d 918 (7th Cir. 1994). In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. Anderson, 477 U.S. at 249-251, 106 S.Ct. at 2511. Furthermore, in determining the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the "Statement of Genuine Issues" filed in opposition to the motion. L.R. 56.1

Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. Anderson, 477 U.S. at 248. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. Id. The issue of fact must be genuine. Fed. R. Civ. P. 56(c), (e). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586; First National Bank of Cicero v. Lewco Securities Corp., 860 F.2d 1407, 1411 (7th Cir. 1988). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. Id. A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-252. Finally, the court notes that, "[i]t is a gratuitous

cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained" and in such cases summary judgment is appropriate. Mason v. Continental Illinois Nat'l Bank, 704 F.2d 361, 367 (7th Cir. 1983).

## Discussion

Thomas has brought the current action against Vaisvilas alleging that Vaisvilas was deliberately indifferent to Thomas' serious medical needs. Thomas is currently an inmate of the Indiana Department of Correction ("DOC"), and at the time of the alleged events that form the basis of his complaint, was confined at Indiana State Prison in Michigan City, Indiana.

Vaisvilas is the statewide Nursing and Contract Compliance Director for DOC. She does not treat individual offenders, and does not work on site at the prison facilities. Vaisvilas asserts, inter alia, that she was not personally involved in the actions that allegedly violated Thomas' rights.

Vaisvilas has supported her summary judgment motion with her sworn declaration and exhibits. This evidence shows that:

1. Plaintiff complains that he is and was suffering from a skin condition. His symptoms include spots on his face, light patches, itchiness, and dry, cracked skin. (Pl.'s Am. Compl.; Ex. A, B.)

2. Plaintiff saw a number of medical professionals regarding his skin problems who were in a position to direct his treatment. (Pl.'s Am. Compl., Decl. Vaisvilas ¶ 21.)

3. Plaintiff asserts that he wrote Defendant Vaisvilas three letters, and a grievance, and that Defendant Vaisvilas denied his prescription for Tinver lotion, and his grievance. (Pl.'s Am. Compl.)

4. Defendant Rose Vaisvilas is the statewide Nursing and Contract Compliance Director for the Indiana Department of Correction ("DOC"), and has held that position for fifteen years. (Decl. Vaisvilas, ¶ 2.)

5. Defendant Vaisvilas is a Nurse Practitioner, and has been since May, 1988. (Decl.

Vaisvilas, ¶ 3.)

6. Defendant Vaisvilas's duties as Nursing and Contract Compliance Director include sharing the responsibility of final reviewer with the Medical Director of DOC, Dr. Elton Amos, over grievances filed regarding medication administration. (Decl. Vaisvilas, ¶ 4.)

7. Defendant Vaisvilas did not make the decision to deny Mr. Thomas's prescription for Tinver lotion. The decision would have been made by either Dr. Mitcheff, the regional director for Correctional Medical Services, Dr. Amos, or both. (Decl. Vaisvilas, ¶ 9.)

8. Defendant Vaisvilas received a grievance appeal from Offender Thomas on February 2, 2007. The grievance appeal alleged that Mr. Thomas needed Tinver lotion but had not received it, that Mr. Thomas had received other types of medication, and that the medication made his face dry and cracked. (Decl. Vaisvilas, ¶ 10; Ex. A.)

9. When Defendant Vaisvilas receives the appeal of an offender grievance, she will evaluate the claim to determine if the facility's response to the initial grievance was appropriate. In some cases, this involves consulting medical records to determine what action has been taken. (Decl. Vaisvilas, ¶ 11.)

10. At the time Defendant Vaisvilas received the grievance appeal filed by Thomas, she would have reviewed the facility response and the electronic medical records. (Decl. Vaisvilas, ¶ 12.)

11. Mr. Thomas's electronic medical records show that Triamcinolone Acetonide was prescribed to him on February 2, 2007. (Decl. Vaisvilas, ¶ 13.)

12. Defendant Vaisvilas denied the grievance appeal filed by Mr. Thomas because the prescription written on February 2, 2007, was for a proper therapeutic substitute for the Tinver lotion, and because the facility indicated that he was receiving medication. (Decl. Vaisvilas, ¶ 14; Ex. A.)

13. Defendant Vaisvilas had no knowledge that Thomas was not receiving the prescribed Triamcinolone Acetonide until she received the letter from Mr. Thomas on March 28, 2008. (Decl. Vaisvilas, ¶ 15; Ex. B.)

14. The letter written by Thomas to Defendant Vaisvilas alleged he was not receiving his medication. She investigated his claims through a request for information from Indiana State Prison, and learned that Thomas did not have an active prescription at the time. (Decl. Vaisvilas, ¶ 16; Ex. B.)

15. Defendant Vaisvilas directed Thomas to submit a request for health care form in

order to speak to his medical provider about refilling or re-ordering the prescription since his initial prescription had expired. (Decl. Vaisvilas, ¶ 17; Ex. B.)

16. Defendant Vaisvilas does not work on site at the Indiana State Prison. (Decl. Vaisvilas, ¶19.)

17. Defendant Vaisvilas has not examined or treated Thomas. (Decl. Vaisvilas, ¶ 20.)

18. Defendant Vaisvilas does not prescribe or distribute medications to offenders. There are medical staff members on site at the facilities whose responsibility it is to provide direct care to the offenders. (Decl. Vaisvilas, ¶ 21.)

19. Defendant Vaisvilas is not authorized to change any prescription or alter any drug regimen prescribed by a treating physician in the DOC. (Decl. Vaisvilas, ¶ 22.)

20. If Defendant Vaisvilas feels that an offender needs an alternate medication, she would consult with Dr. Amos, the onsite physician, and or Dr. Mitcheff, requesting review of treatment. (Decl. Vaisvilas, ¶ 23.)

21. Based upon the information she had at the time, Defendant Vaisvilas had no reason to believe that Mr. Thomas was not receiving an appropriate therapeutic substitute for the Tinver lotion, which would take care of his face condition. (Decl. Vaisvilas, ¶ 24.)

22. Based upon the information she had at the time, Defendant Vaisvilas had no reason to believe that Mr. Thomas was at risk of serious injury when she denied grievance log # 25819, nor when she responded to his letter in 2008. (Decl. Vaisvilas, ¶ 25.)

To prevail under 42 U.S.C. § 1983, a plaintiff must establish that (1) he had a constitutionally protected right, (2) he was deprived of that right in violation of the Constitution, (3) the defendant intentionally caused that deprivation and (4) the defendant acted under color of state law. *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 513 (7th Cir. 1993); *Patrick v. Jasper County,* 901 F.2d 561, 565 (7th Cir. 1990).

To succeed on his claim against Vaisvilas, Thomas must prove that his rights were violated under the Eighth Amendment to the United States Constitution. The Eighth Amendment

prohibits cruel and unusual punishment, and this proscription has been found to include a duty "to provide adequate medical care to incarcerated individuals." *Johnson v. Doughty,* 433 F.3d 1001, 1010 (7th Cir. 2006)(*citing Boyce v. Moore*, 314 F.3d 884, 888-89 (7th Cir. 2002); *Estelle v. Gamble,* 429 U.S. 97, 103 (1976)).

There are two elements of a claim against a prison official premised on a denial of medical care. A plaintiff must prove a subjective component, showing that the prison official acted with deliberate indifference to the prisoner's health or safety; and an objective component, showing that the plaintiff had a serious medical need. *Id.,* at 1010 (*citing Greeno v. Daley*, 414 F.3d 645, 652 (7th Cir. 2005)).

Vaisvilas argues that the undisputed facts show that she cannot be held liable because she was not personally involved in the actions Thomas claims deprived him of his rights.

An individual can be held liable under Section 1983 only for deprivations she personally caused, either by direct action or by approval of the conduct of others—vicarious liability cannot support a Section 1983 claim. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *Moore v. State of Indiana*, 999 F.2d 1125, 1129 (7th Cir. 1993) (liability under Section 1983 must be based on personal responsibility, not *respondeat superior*). In order to be held responsible for the violation of a federally secured right pursuant to 42 U.S.C. § 1983, an individual must have personally participated in the alleged constitutional violation. *Zimmerman v. Tribble*, 226 F.3d 568, 574 (7th Cir. 2000)(*citing Starzenski v. City of Elkhart,* 87 F.3d 872, 879 (7th Cir.1996)). Liability can be based only on a finding that conduct causing a constitutional deprivation occurred at the defendant's direction or with his or her knowledge and consent. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995).

Nor can liability be established by a showing of negligent supervision on the official's part. *Rascon v. Hardiman*, 803 F.2d 269, 273 (7th Cir. 1986). It is not enough to merely show that the offender has sent letters to a supervisory official. *Crowder v. Lash*, 687 F.2d 996, 1006 (7th Cir.1982). *See also Catrabone v. Farley*, No. 94-367 (N.D.Ind. Sept. 26, 1995) 1995 WL 646281 at *6 (letter writing campaign is not sufficient to establish personal involvement of a prison official; collecting cases).

Specifically, the Seventh Circuit has held that denying an administrative complaint does not violate a prisoner's constitutional rights. "Only persons who cause or participate in the violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation." *George v. Smith*, 507 F.3d 605 (7th Cir. 2007) (citing *Greeno v. Daley*, 414 F.3d 645, 656-57 (7th Cir. 2005); *Reed v. McBride*, 178 F.3d 849, 851-52 (7th Cir. 1999); *Vance v. Peters*, 97 F.3d 987, 992-93 (7th Cir. 1996)). In an unpublished decision, *Perez v. Zunker,* 2008 WL 2178112 (7th Cir., May 27, 2008), the Seventh Circuit applied *George v. Smith* to uphold summary judgment granted to a nurse coordinator whose

> only apparent involvement with [Plaintiff] was to review his grievance, and in that capacity she recommended that his grievance be denied because investigation had shown that he was receiving ongoing care for his back pain. … [The nurse coordinator] simply rejected [Plaintiff's] grievance after satisfying herself that treatment was being provided, and no jury could reasonably conclude that her conduct amounted to deliberate indifference.

*Perez v. Zunker,* 2008 WL 2178112 (7th Cir., May 27, 2008) (citing *George v. Smith,* 507 F.3d at 609). The *Perez* case has essentially the same facts as the instant case. In this case, Vaisvilas did not provide medical care to Thomas. There were medical staff at the facility who were tasked with providing that care. Vaisvilas is responsible for responding to offender grievances, and investigated the grievance filed by Mr. Thomas. She is not responsible for

8

prescribing or distributing medications, and she has no authority to alter the medications prescribed by the medical staff at the facility. The underlying violation alleged by Thomas is that he did not receive his medication. Vaisvilas does not prescribe or distribute medication. This court agrees with Vaisvilas that she was not personally involved in the alleged deprivation and cannot be held liable.

Vaisvilas next argues that the undisputed facts show that she did not have any knowledge that Thomas was not receiving his prescribed medication or an acceptable substitute, and therefore she is entitled to summary judgment on this basis as well.

Vaisvilas notes that Thomas cannot prove there was a denial of medical care in contravention of the Eighth Amendment without the subjective component of the claim – he must prove that Vaisvilas was deliberately indifferent. Deliberate indifference is a high standard, requiring a "sufficiently culpable state of mind." *Greeno*, 414 F.3d at 653 (*quoting Farmer v. Brennan,* 511 U.S. 825, 834 (1994) (internal quotations omitted)). In order to be found deliberately indifferent, a prison official "must know of and disregard an excessive risk to inmate health; indeed they must 'both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists' and 'must also draw the inference.'" *Id.*

Put another way, a prison official "must consciously disregard that risk/need so as to inflict cruel and unusual punishment upon the prisoner." *Johnson*, 433 F.3d at 1010 (*citing Farmer*, 511 U.S. at 837-38; *Higgins v. Corr. Med. Servs. Of Ill., Inc.,* 178 F.3d 508, 511 (7th Cir. 1999)). "[N]egligence or even gross negligence is not enough; the conduct must be reckless in the criminal sense." *Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008) (*citing Farmer v.*

9

*Brennan*, 511 U.S. 825, 836-37 (1994)). "Prison officials are expected to 'act responsibly under the circumstances that confront them' but are not required to act flawlessly." *Id.*, at 511 (*quoting Riccardo v. Rausch,* 375 F.3d 521, 525 (7th Cir. 2004)).

Thomas claims that he has not received topical medication for his skin condition, and that Vaisvilas denied him this medication. (Pl.'s Am. Compl.at p. 5.) However, the facts show that Vaisvilas is the statewide Nursing and Contract Compliance Director, as well as a Nurse Practitioner. She works at the DOC Central Office in Indianapolis, Indiana, and has never worked on site at Indiana State Prison. Her job duties include sharing responsibility for responding to offender grievances.

Vaisvilas has not diagnosed, treated or examined Thomas. The decision to deny the prescription of Tinver was not Vaisivilas' decision. Vaisvilas responded to Thomas' grievance with the information that she had. When Vaisvilas received the grievance appeal filed by Thomas on February 2, 2007, she acted responsibly and determined that an appropriate substitute medication had been prescribed. Her job is not to treat the offenders, but to resolve the grievances filed by offenders. After her investigation revealed that Thomas was receiving a prescription for an appropriate substitute medication for Tinver, written the day she received the grievance, Vaisvilas had information that Thomas was receiving treatment. She had no reason to believe that Thomas was not receiving the appropriate substitute for his skin care until she received the letter written by Thomas in March 2008.

The evidence shows that when Vaisvilas received Thomas' letter, she investigated his claims that he was not receiving medication with the facility, and determined that he no longer had an active prescription. At that point, Vaisvilas cannot take further action without an order

from Thomas' treating physician. She has no authority to change any prescriptions, or to prescribe or distribute medication to offenders. Her letter directed Thomas to fill out a request for health care form in order to talk to his medical provider about receiving a new prescription. Vaisvilas had no reason to believe that Thomas was not receiving appropriate care for his face condition. Vaisvilas had no reason to believe that Plaintiff was at risk of serious injury either when she denied his grievance or when she responded to his letter.

The undisputed facts show that Vaisvilas was not aware of facts indicating that Thomas was at risk of serious injury, and that Vaisvilas did not actually draw the inference that Thomas was at risk of serious injury. If she had believed Thomas needed alternative medication, there were steps she could have taken - although she could not directly change the prescribed treatment. She did not take any of the steps because she had no reason to believe an alternate medication was necessary.

The division of labor between medical staff and administrative staff has been recognized by the courts. In *Greeno v. Daley*, the Seventh Circuit found that when a prison official refers the matter to medical professionals, a failure to act further cannot be viewed as deliberate indifference. Quoting the Third Circuit, the Court held if a prisoner is under the care of medical experts a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor. *Greeno*, 414 F.3d at 656 (*quoting Spruill v. Gillis*, 372 F.3d 218, 236 (3rd Cir. 2004)). In *Greeno*, the

Court held a prison official who handled the appeals of prisoner Greeno's complaints could not be found deliberately indifferent because he had "investigated the complaints and referred them to the medical providers who could be expected to address Greeno's concerns." *Greeno*, at 656 (gathering cases). In *Greeno*, the prison official was responsible for handling prisoner grievances. Here, the same principles apply even though Vaisvilas is a Nurse Practitioner. Her responsibility is not for the direct medical care assigned to medical staff at the prison. The information available to Vaisvilas when she looked into Thomas' complaint was that he was receiving acceptable treatment, therefore she denied his grievance. Thomas cannot seek monetary damages from Vaisvilas for denying his grievance. *See Wilson v. VanNatta*, 291 F. Supp. 2d 811, 819 (N.D. Ind. 2003) ("that a prison official ignores or denies a prisoner's grievance does not violate the prisoner's federally protected rights"). It is abundantly clear that Vaisvilas was not deliberately indifferent to any serious medical need of Thomas, and is entitled to summary judgment as a matter of law.

     Vaisvilas next argues that Thomas' alleged condition is not a serious medical need. Thomas complains that his face was dry and cracked, and that he had light spots and patches on his skin. To be actionable under the Eighth Amendment, a medical condition must be objectively serious – a condition "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Greeno,* 414 F.3d at 653. This objective component is essential to proving Thomas' claim. A condition is objectively serious if "failure to treat [it] could result in further significant injury or unnecessary and wanton infliction of pain." *Reed v. McBride*, 178 F.3d 849, 852 (7th Cir. 1999)(quoting

*Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997)). Thomas' condition does not rise to the level required to prove a violation of the Eighth Amendment. Prisoners are "not entitled to demand specific care." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). In addition, "[e]very claim by an inmate that he has not received adequate medical attention does not constitute a violation of the Eighth Amendment." *Ware v. Fairman,* 884 F.Supp. 1201, 1205 (N.D. Ill. 1995). There is no evidence that the dry skin or spots associated with Thomas' complaints are a serious medical need. Thomas' complaints are akin to complaints regarding acne, or a rash, and there is no evidence they are sufficiently harmful to violate the Eighth Amendment. *See Id.* (finding refusal to provide rash and acne medication is not sufficiently harmful to evidence deliberate indifference to a serious medical need.). Thus, summary judgment is also appropriate on this basis.

Lastly, Vaisvilas asserts that she is entitled to qualified immunity from suit for her actions. The test for qualified immunity involves a determination of whether a constitutional violation occurred, as well as whether there was a clearly established right at the time the public official acted. *Saucier v. Katz,* 533 U.S. 194 (2001). In a recently decided Supreme Court decision, the Court discarded a previous requirement of *Saucier* to analyze the two prongs of qualified immunity claims in a specific order. *See Pearson v. Callahan*, No. 07-751; 555 U.S. --- (Decided January 21, 2009).

Qualified immunity protects officials who are performing discretionary functions from damages under Section 1983, so long as their conduct conforms to what a reasonable official would have believed lawful in light of clearly established law and the information possessed by the particular official at the time of the challenged conduct. *Harlow v. Fitzgerald,* 457 U.S. 800,

818 (1982). "Qualified immunity is a judicially created doctrine that stems from the conclusion that few individuals will enter public service if such service entails the risk of personal liability for one's official decisions." *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994).

If the constitutional right was not clearly established at the time the official acted, the official is entitled to qualified immunity from suit. *Leaf v. Shelnutt*, 400 F.3d 1070, 1080 (7th Cir. 2005). "Clearly established" means "the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates the right. The action's unlawfulness must be 'apparent' from pre-existing law.'" *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (stating "[w]hen qualified immunity applies, a defendant is not merely entitled to a defense from liability; he is entitled not to stand trial")).

Thomas has the burden to establish that at the time of the incident, "the law was so 'clearly established' that a 'reasonable official would understand that what he is doing violates that right.'" *Chan v. Wodnicki*, 123 F.3d 1005, 1008 (7th Cir. 1997) (citations omitted). Thomas has not presented a reasonably analogous case which would show that Vaisvilas' conduct was clearly outside the scope of the law or that any of the alleged conduct was so obviously unlawful that a reasonable person would have necessarily known the conduct to be unlawful. *See Id.* (Plaintiff must show a reasonably analogous case which articulated the right at issue and applied it to a similar factual circumstance.)

In fact, there is not an analogous case showing that denying a prisoner's grievance for specific medication when information indicated the prisoner was receiving an acceptable substitute would be a constitutional violation. Also, there is not an analogous case showing that responding to a prisoner's letter and directing them to seek health care from their health care

14

provider would be a constitutional violation. Because Vaisvilas reasonably believed that her conduct was not violating Thomas' constitutional rights, she is entitled to qualified immunity from suit and summary judgment should be granted in her favor.

## Conclusion

On the basis of the foregoing, Vaisvilas' motion for summary judgment [DE 34] is hereby GRANTED.

Entered: May 8, 2009.

                                                                     s/ William C. Lee
                                                                     William C. Lee, Judge
                                                                     United States District Court